Rita MCDANIEL, Individually and as Personal Representative of the Estate of Johnny F. McDaniel, Deceased, Plaintiff,

v.

UPSHER–SMITH PHARMACEUTICALS, INC., Defendant.

No. 2:16–cv–02604–JPM–cgc

United States District Court, W.D. Tennessee, Western Division.

Signed 01/26/2017

Edward Kirksey Wood, Jr., Wood Law Firm LLC, Birmingham, AL, Dustin Colt Childers, Langston & Lott, P.A., Booneville, MS, for Plaintiff.

Eric E. Hudson, Butler Snow O'Mara Stevens & Canada, PLLC, Kyle R. Cummins, Butler Snow LLP, Memphis, TN, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

JON P. McCALLA, UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Upsher–Smith Pharmaceuticals, Inc.'s Motion to Dismiss, filed August 22, 2016. (ECF No. 17.) For the reasons stated below, the Motion to Dismiss is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Factual Background

Rita McDaniel brings an action on behalf of the estate of Johnny F. McDaniel for wrongful death. Plaintiff asserts that her husband was prescribed 200 mg amiodarone tablets in May 2015 for treatment of his non-life-threatening atrial fibrillation. (Compl. at 11, ECF No. 1.) The amiodarone tablets were manufactured and

sold by Upsher–Smith Pharmaceuticals, Inc as a generic version of Wyeth's Cordarone under the name Paecerone. (Id. at 12; Def.'s Mem. for Mot. to Dismiss at 1–2, ECF No. 17–1.) Wyeth has received approval from the Food and Drug Administration (FDA) to market and sell amiodarone as a drug of last resort for patients suffering from life-threatening ventricular fibrillation and ventricular tachycardia. (Compl. at 4, ECF No. 1; Def.'s Mem. for Mot. to Dismiss at 2, ECF No. 17–1.) Plaintiff asserts that Defendant promoted the "off-label" use of amiodarine as an initial treatment for patients with atrial fibrillation, though Defendant was aware that such a use had not received FDA approval and may result in serious pulmonary illness, toxicity, and death. (Id. at 4–5.) Plaintiff asserts that her husband was given the amiodarone for off-label use, though he was not in a situation of "last resort" as to the management of his atrial fibrillation and his condition was not life threatening. (Id. at 5, 11.) Mr. McDaniel received his medication at the Naval Branch Health Clinic. (Id.) Plaintiff further asserts that Mr. McDaniel did not receive the FDA Medication Guide and current warning labels for the prescriptions. (Id. at 11.) Plaintiff alleges that Mr. McDaniel developed several pulmonary complications as a result of the inappropriate off-label use. (Id. at 15.) Mr. McDaniel was admitted to Methodist LeBonheur Hospital on June 22, 2015 and died on July 22, 2016 at the age of 78. (Id. at 5, 15.) Plaintiff asserts six claims: (1) strict liability/failure to warn, (2) negligence—failure to warn, (3) negligence—marketing and sales, (4) negligence per se, (5) fraud and deceit, and (6) wrongful death. (Id. at 26–36.) Plaintiff alternatively requests that she be allowed to file an amended complaint. (Pl.'s Resp. at 17–20, ECF No. 23.)

## B. Procedural Background

Plaintiff filed a Complaint on July 21, 2016. (ECF No. 1.) Defendant filed a Motion to Dismiss on August 22, 2016. (ECF No. 17.) On September 9, 2016, the Court entered an order staying all deadlines in the case and continuing the Rule 16 scheduling conference pending the Court's ruling on the instant Motion to Dismiss. (ECF No. 22.) Plaintiff filed a response on September 21, 2016. (ECF No. 23.) Defendant filed a reply on October 5, 2016. (ECF No. 24.)

## II. Legal Standards

### A. Motion to Dismiss

A court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

> A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. ... A claim is facially plausible when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. ... [T]he court need not accept as true allegations that are conclusory or require unwarranted inferences based on the alleged facts.

Newberry v. Silverman, 789 F.3d 636, 640 (6th Cir. 2015) (citations and internal quotation marks omitted). "Plausibility is not the same as probability, but it requires 'more than a sheer possibility that a defendant has acted unlawfully.'" Mik v. Fed. Home Loan Mortg. Corp., 743 F.3d 149,

157 (6th Cir. 2014) (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937). A court must "construe[ ] the complaint in a light most favorable to the plaintiff." HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 611 (6th Cir. 2012).

In alleging fraud, Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead with particularity "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Fed. R. Civ. P. 9(b); Sanderson v. HCA–The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006) (quoting Yuhasz, 341 F.3d 559, 563 (6th Cir. 2003)); Glassner v. R.J. Reynolds Tobacco Co., 223 F.3d 343, 346 (6th Cir. 2000) ("[A] complaint alleging fraud must allege with particularity those circumstances constituting fraud"). At a minimum, a plaintiff must "allege the time, place and contents of the misrepresentation(s) upon which he relied." Bender v. Southland Corp., 749 F.2d 1205 (6th Cir. 1984).

### B. Federal Preservation

■ The Supremacy Clause establishes the concept of federal preemption, stating that federal law "shall be the supreme Law of the Land." U.S. Const., Art. VI, cl. 2. State law is preempted by federal law if: 1) Congress expressly states its intention to preempt state law; 2) Congress intends for federal law to "occupy the field"; or 3) it is impossible to comply with both state and federal requirements, or compliance with state law would create an obstacle to the achievement of Congress's purposes. Crosby v. National Foreign Trade Council, 530 U.S. 363, 373–74, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000).

■ In Buckman, the Supreme Court found that the plaintiffs' state law claims were preempted where the claims arose solely from the alleged violation of FDCA requirements, rather than parallel state-law causes of action. Buckman Co. v. Plaintiff's Legal Committee, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). The Supreme Court stated that "certain state-law causes of actions that parallel federal safety requirements" may be allowed; however, it is incorrect that "any violation of the FDCA will support a state-law claim." Id. at 352, 121 S.Ct. 1012. The Court emphasized that the plaintiffs were not "relying on traditional state tort law which had predated the federal enactments in question[ ]" but that "the existence of these federal enactments is a critical element in their case." Id. at 353, 121 S.Ct. 1012. In In re Darvocet, the Sixth Circuit found that a plaintiff's claims for statutory negligence were preempted by Buckman as they were premised on the defendants' violation of the FDCA. In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation, 756 F.3d 917 (6th Cir. 2014). The Sixth Circuit reiterated that "the FDA has the exclusive power to enforce the FDCA" and "there is no private right to enforce the statute." Id. at 936. If a claim would not exist in the absence of the FDCA, it is impliedly preempted. Loreto v. Procter & Gamble Co., 515 Fed. Appx. 576, 579 (6th Cir. 2013) ("This theory of liability depends entirely upon an FDCA violation ... the theory is impliedly preempted by federal law.").

#### 1. Failure to Warn

The requirement to provide a medication guide is found in the Food, Drug and Cosmetic Act (FDCA), 21 C.F.R. § 208.24. (Compl. at 12–14, ECF No. 1.) 21 C.F.R. § 208.24 requires that "[e]ach manufacturer who ships a container of drug product for which a Medication Guide is required under this part is responsible for ensuring that Medication Guides are available for distribution to patients ..." 21 C.F.R. § 208.24(b). Additionally, the FDA re-

quires that "Medication Guides be issued with certain prescribed drugs ... when the Agency determines that: certain information is necessary to prevent serious adverse effects, patient decision-making should be informed by information about a known serious side effect with a product, or patient adherence to directions for the use of a product are essential to its effectiveness." Medication Guides, U.S. Food & Drug Administration, http://www.fda.gov/Drugs/DrugSafety/ucm085729.htm (including Cordarone and Pacerone on the list of products for which Medication Guides are available).[1]

### 2. "Off–Label" Promotion

 The concept of "off-label use and promotion" is derived from and defined by the FDCA regulatory system and has no state-law equivalent. Hafer v. Medtronic, Inc., 99 F.Supp.3d 844, 857 (W.D. Tenn. 2015). Off-label use "is an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine." Id. at 858 (quoting Buckman, 531 U.S. at 350, 121 S.Ct. 1012). The FDCA does not provide a private cause of action; therefore, any claim based solely on off-label promotion is impliedly preempted. See Hafer, 99 F.Supp.3d at 856–57; Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (holding that the FDCA does not provide a private cause of action). Even if the claim is formally asserted under state law, the claim may still be preempted if it is "in substance" a claim for violating the FDCA. Hafer, 99 F.Supp.3d at 857.

### 3. Fraud and Deceit

In Hafer, the Western District of Tennessee found that the plaintiff's claim for fraudulent concealment, misrepresentation, and fraud during the promoting and marketing of the product was not preempted. Hafer, 99 F.Supp.3d at 859. The court reasoned that the plaintiff's claim of misrepresentations during promoting and marketing did not provide requirements "different from, or in addition to" federal requirements and so avoided express preemption. Id. The court also noted that Plaintiff's claim was "independently supported by traditional state laws against false and misleading advertising, thereby avoiding implied preemption." Id. "[S]tate fraud-based claims 'are parallel or genuinely equivalent to federal law.' " Id. (quoting Schouest v. Medtronic, Inc., 13 F.Supp.3d 692, 704 (S.D. Tex. 2014)). Similarly, in Loreto, the Sixth Circuit found that a claim of false or misleading statements in marketing of the product was not preempted as the theory "relie[d] solely on traditional state tort law predating the

---

1. The parties cite cases from other circuits with similar facts. Defendant cites Perdue, a case in which the Eastern District of North Carolina found that, since the requirement to provide a medication guide is based solely in the requirements of the FDCA and related regulations and not under the state common law, the plaintiff's claims based upon failure to provide such a guide were preempted under Buckman. Perdue v. Wyeth Pharmaceuticals, Inc., 209 F.Supp.3d 847, 852–53, 2016 WL 3951091, at *5 (E.D.N.C. July 20, 2016). In contrast, Plaintiff cites Eckhardt v. Qualitest Pharmaceuticals, Inc., a case in which the Fifth Circuit stated that a claim against a generic drug manufacturer for failure to pro-

vide FDA-approved warnings would be a violation of both state and federal law and therefore would not be preempted. Eckhardt v. Qualitest Pharms., Inc., 751 F.3d 674 (5th Cir. 2014) (affirming the district court's dismissal of the plaintiff's claim nevertheless, as the plaintiff failed to adequately allege the failure to warn claim); see also Rusk v. Wyeth–Ayerherst Laboratories, Inc., 2015 WL 3651434 (W.D. Tex. June 11, 2015) (applying Eckhardt to hold that a claim for failure to provide a medication guide was not preempted). The Court considers the reasoning in such cases only persuasive and not binding authority.

FDCA, and would exist in the absence of the Act." Loreto v. Procter & Gamble Co., 515 Fed.Appx. 576 (6th Cir. 2013).

### C. Motions for Leave to Amend

"Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires." Riverview Health Inst. LLC v. Med. Mut. of Ohio, 601 F.3d 505, 520 (6th Cir. 2010). Rule 15 "plainly embodies a liberal amendment policy," Morse v. McWhorter, 290 F.3d 795, 800 (6th Cir. 2002), that "reinforces the principle that cases should be tried on their merits rather than the technicalities of pleadings," Inge v. Rock Fin. Corp., 388 F.3d 930, 937 (6th Cir. 2004) (quoting Moore v. City of Paducah, 790 F.2d 557, 559 (6th Cir. 1986)) (alterations and internal quotation marks omitted).

■■■ A motion for leave to amend a complaint "may be denied where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Riverview, 601 F.3d at 520 (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)) (internal quotation marks omitted). A proposed amendment is futile "if the court concludes that the pleading as amended could not withstand a motion to dismiss." Midkiff v. Adams Cnty. Reg'l Water Dist., 409 F.3d 758, 767 (6th Cir. 2005) (quoting Martin v. Associated Truck Lines, Inc., 801 F.2d 246, 249 (6th Cir. 1986)).

### III. Analysis

Defendant argues that the Complaint must be dismissed on grounds of federal preemption. (Mot. to Dismiss, ECF No. 17.) Defendant also asserts that Plaintiff's claim of fraud and deceit fails to satisfy the pleading standards of Federal Rule of Civil Procedure 9(b). (Mem. for Mot. to Dismiss at 17, ECF No. 17–1.)

### A. Failure to Warn

■■■ Plaintiff makes claims of strict products liability—failure to warn (Count 1) and negligence—failure to warn (Count 2), stating that Defendant failed to provide "sufficient instructions or warnings" of the "potential risks and side effects of amiodarone," "including but not limited to failing to ensure [Plaintiff] was timely provided the Medication Guide." (Compl. at 27–28, ECF No. 1.) In his Response to the Motion to Dismiss, Plaintiff clarified that he "does not allege that the contents of the labeling should have been changed," rather, he "alleges that the Medication Guide and its warnings were not provided to him in accordance with the FDA mandate." (Pl.'s Resp. at 12, ECF No. 23.)

The requirement to provide a medication guide is found in the FDCA. Plaintiff has not cited parallel state-law safety requirements to provide a medication guide under Tennessee law. Plaintiff's claims are premised upon Defendant's violation of federal standards for the distribution of medication guides set forth in the FDCA and would not exist "in the absence of the FDCA." Buckman, 531 U.S. at 353, 121 S.Ct. 1012. Therefore, Plaintiff's claims based upon failure to warn due to failure to provide a medication guide are preempted under Buckman. The Court grants Defendant's motion to dismiss on Plaintiff's failure-to-warn claims (Counts 1 and 2).

### B. "Off–Label" Promotion

■■■ Plaintiff claims that Defendant marketed and sold amiodarone in an "off-label" manner as a "first line" drug to be used in the treatment of atrial fibrillation, rather than for uses approved by the FDA, thus asserting that Defendant is liable under the theories of negligence and negli-

gence per se (Counts 3 and 4). (Compl. at 30–32, ECF No. 1.)

Plaintiff's claims are impliedly preempted by the FDCA as both claims are based upon off-label use and promotion, which is a concept that is entirely derived from and defined by the FDCA in substance. See Hafer, 99 F.Supp.3d at 857. As the concept of "off-label" is entirely federal, Plaintiff's claims would not exist in the absence of the FDCA and are therefore impliedly preempted under Buckman. The Court therefore grants Defendant's Motion to Dismiss with regard to Counts 3 and 4.

### C. Fraud and Deceit

■ Plaintiff alleges that Defendant misled him, his physician, scientific and medical communities, the FDA, and the public regarding the safety risks of amiodarane (Count 5). (Compl. at 32–35, ECF No. 1.) Plaintiff alternatively requests that she be allowed to file an amended complaint. (Pl.'s Resp. at 17–20, ECF No. 23.) Defendant argues that "Plaintiff has failed to plead her fraud-based claims with the particularity required under Rule 9(b)" and states that the Court should deny Plaintiff's request for leave to amend the Complaint as any amendment would be futile. (Def.'s Reply at 7–9, ECF No. 24.)

■ Plaintiff's claim of fraud and deceit is not expressly or impliedly preempted. State claims of fraud and deceit do not provide requirements in conflict with federal requirements. State laws traditionally prohibit fraud and deceit in advertising and marketing as well. Plaintiff, however, fails to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiff has not included facts regarding the alleged affirmative misrepresentations made during the marketing of the product on which Plaintiff, doctors, or members of the public relied.

Rule 15 contains a liberal amendment policy. Defendant asserts that any amend-

ment to the Complaint would be futile. The Court, however, finds that Defendant would not be unduly prejudiced by virtue of allowing amendment. The Court also finds that amendment of Count 5 would not be futile as it would be possible for Plaintiff to allege additional facts that plead her fraud claim with particularity and the fraud claim would not be preempted by federal law. The Court therefore denies Defendant's Motion to Dismiss with regard to Count 5 and grants Plaintiff leave to file an amended complaint to allege fraud and deceit with particularity.

### D. Wrongful Death

Plaintiff brings a claim against Defendant for wrongful death, alleging that the death of Johnny McDaniel was caused by Defendant's negligence (Count 6). (Compl. at 35–36, ECF No. 1.)

Defendant has not addressed the wrongful death claim in its Motion to Dismiss. The wrongful death claim contains sufficient factual matter to meet the plausibility requirements of Rule 12(b)(6). Defendant's Motion to Dismiss is denied with regards to Count 6 of the Complaint.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 17) is GRANTED in part and DENIED in part. Counts 1 through 4 of the Complaint are dismissed with prejudice. The Court denies Defendant's Motion to Dismiss Count 6. Plaintiff may file an amended complaint regarding Count 5 within ten (10) calendar days of the entry of this Order.

**IT IS SO ORDERED**, this 26th day of January, 2017.